IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
OCT -8 2010
CLERK, U.S. DISTRICT COURT
By _____
Deputy

| | |
|---|---|
| BANK OF AMERICA, NATIONAL ASSOCIATION, A SUCCESSOR-BY-MERGER TO LASALLE BANK, NATIONAL ASSOCIATION, AS TRUSTEE FOR THE REGISTERED HOLDERS OF HOMETOWN COMMERCIAL TRUST 2007-1, COMMERCIAL MORTGAGE-BACKED NOTES, SERIES 2007-1,<br><br>    Plaintiff,<br><br>VS.<br><br>ROSALIE WEISS,<br><br>    Defendant. | §§§§§§§§§§§§§§§§§ NO. 4:10-CV-283-A |

## MEMORANDUM OPINION
and
ORDER

Before the court for decision is the motion of defendant, Rosalie Weiss, to dismiss for lack of personal jurisdiction. Plaintiff, Bank of America, National Association, a successor-by-merger to LaSalle Bank, National Association, as trustee for the registered holders of Hometown Commercial Trust 2007-1, Commercial Mortgage-Backed Notes, Series 2007-1, filed a response, to which defendant replied. After having considered the motion, the filings of the parties, the entire record, and

pertinent legal authorities, the court concludes that the motion should be denied.

Also pending is plaintiff's unopposed motion for leave to file an amended complaint. The court concludes that such motion should be granted.

I.

Background

Defendant, a New York resident, is the vice-president, secretary, and one-half owner of 150 Marcy Avenue Realty Corp. ("150 Marcy"), a New York corporation involved in the operation of commercial real estate.

In 2006, 150 Marcy, acting through defendant, entered into an agreement with Hometown Commercial Capital, LLC ("Hometown") by which Hometown agreed to loan 150 Marcy $4,500,000 for the purchase of real property located at 4200 Buckingham Road, Fort Worth, Texas (the "property"). Defendant, on behalf of 150 Marcy, executed and delivered a promissory note payable to Hometown in the amount of the loan, a deed of trust for the benefit of the holder of the note on the property securing payment of the note, and an assignment to Hometown of rights to all leases and rents arising from the property. Each of the loan

documents stated that it was to be governed, construed, applied, and enforced in accordance with Texas law.

In addition to securing payment of the note, the deed of trust imposed on 150 Marcy performance obligations that necessarily must be accomplished in Texas where the real property described in the deed of trust is located. As examples, the deed of trust obligates 150 Marcy to manage the property "in a first class manner by a professional third-party management company approved by Lender during the term of the Loan," Pl.'s Resp., App. at 20, § 3.2(a); to obtain and maintain, at all times until the repayment of the Loan, insurance on the property, id., § 3.3(a)(i); to promptly pay by their due dates all taxes, assessments, water rates, sewer rates, and other charges, levied or assessed or imposed against the property, id. at 22, § 3.4; to diligently prosecute any eminent domain proceeding affecting the property, id. at 23, § 3.6; to "promptly commence and diligently proceed to restore, repair, replace, or rebuild the Property in a workmanlike manner" in the event of damage or destruction of the Texas property, id., § 3.7(a); and, to "cause the Property to be maintained in a good and safe condition and repair, and at all times in a manner consistent with its current use," id. at 26, § 3.9.

Simultaneous to her execution of the loan documents on behalf of 150 Marcy, defendant signed, as a part of the loan documents, a guaranty by which she personally guaranteed performance of 150 Marcy's obligations under the note and deed of trust. The guaranty provides, in pertinent part:

> WHEREAS, Lender[1] is not willing to make the Loan, or otherwise extend credit, to Borrower unless Guarantor unconditionally guarantees payment and performance to Lender of the "Guaranteed Obligations" (as herein defined); and
>
> AGREEMENT:
>
> NOW THEREFORE, as an inducement to Lender to make the Loan to Borrower, and to extend such additional credit as Lender may from time to time agree to extend under the Loan Documents, and for other good and valuable consideration, the receipt and legal sufficiency of which are hereby acknowledged, the parties do hereby agree as follows:
>
> ARTICLE I - NATURE AND SCOPE OF GUARANTY
>
> Section 1.1   <u>Guaranty of Obligation</u>. Guarantor hereby irrevocably and unconditionally guarantees to Lender and its successors and assigns the payment and performance of the "Guaranteed Obligations" (as herein defined) . . . .
>
> . . . .
>
> Section 1.2   <u>Definition of Guaranteed Obligations</u>.

---

[1] The guaranty refers to defendant as "Guarantor," 150 Marcy as "Borrower," and Hometown as "Lender."

> (a) As used herein, the term "Guaranteed Obligations" means, (I) subject to Section 1.2(b) below, the full amount of the Debt and all other obligations of Borrower to Lender under the Loan Documents . . . .
>
> . . . .
>
> Section 1.3   Nature of Guaranty.  This Guaranty is an irrevocable, absolute, continuing guaranty of payment and performance and not a guaranty of collection.
>
> . . . .
>
> ARTICLE V - MISCELLANEOUS
>
> Section 5.3   Governing Law.  This Guaranty shall be governed by and construed in accordance with the laws of the State in which the real property encumbered by the Security Instrument is located . . . .
>
> . . . .
>
> Section 5.13   Special Texas Provisions.  By signing this Guaranty, Guarantor WAIVES each and every right to which it may be entitled by virtue of suretyship law, including any rights it may have pursuant to Rule 31 of the Texas Rules of Civil Procedure, § 17.001 of the Texas Civil Practice and Remedies Code, Chapter 34 of the Texas Business and Commerce Code, and Section 51.005 of the Texas Property Code, as each of the same may be amended from time to time.

Pl.'s Resp., App. at 1-8.

After the purchase of the property was complete, defendant made at least three, and as many as five, trips to Fort Worth to conduct business related to the property. In 2007 she flew to

Fort Worth to view the property with members of the management company from which 150 Marcy had purchased the property. During later trips she recruited brokers, all of whom were based in Texas, to market and rent the property.

Sometime in 2009, 150 Marcy defaulted on its obligations under the note and deed of trust. Plaintiff,[2] through its attorney, sent notice to defendant of the default and demanded payment due under the guaranty. Alleging that defendant has failed to comply with her guaranty obligations, plaintiff seeks recovery from defendant of damages for breach of the guaranty, attorney's fees, pre-judgment and post-judgment interest, and reasonable costs of court.

II.

Applicable Principles of Personal Jurisdiction

When a nonresident defendant challenges personal jurisdiction, the plaintiff bears the burden of proving that jurisdiction exists. Luv N' Care, Ltd. v. Insta-Mix, Inc., 438 F.3d 465, 469 (5th Cir. 2006). The plaintiff need not, however, prove jurisdiction by a preponderance of the evidence; a prima

---

[2] Plaintiff alleges that it acquired the right to enforce the note, deed of trust, assignment of leases and rents, and guaranty by virtue of an allonge and assignment signed December 18, 2006, by Hometown, as assignor.

facie showing is sufficient. Id. In resolving the jurisdictional issue, the court may consider anything on file in the record, including the pleadings, "affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery." Revell v. Lidov, 317 F.3d 467, 469 (5th Cir. 2002).

In a diversity action, a federal court may exercise personal jurisdiction over a nonresident defendant if: (1) the nonresident defendant is amenable to service of process under the long-arm statute of the forum state, and (2) the exercise of personal jurisdiction is consistent with the Due Process Clause of the Fourteenth Amendment. Id. The Texas long-arm statute has been interpreted to reach as far as the federal Constitution permits. See, e.g., Kawasaki Steel Corp. v. Middleton, 699 S.W.2d 199, 200 (Tex. 1985) (per curiam). Accordingly, the court need only decide whether exercising jurisdiction over defendant in Texas is consistent with the Due Process Clause. Revell, 317 F.3d at 469-70.

The exercise of jurisdiction over a nonresident defendant comports with the Due Process Clause if (1) the defendant has "minimum contacts" with the forum state; and (2) the exercise of jurisdiction over that defendant does not offend "traditional

notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). To establish minimum contacts with the forum state, a defendant must do some act by which it "'purposefully avails itself of the privilege of conducting activities in the forum state, thus invoking the benefits and protections of its laws.'" Growden v. Ed Bowlin & Assocs., Inc., 733 F.2d 1149, 1151 (5th Cir. 1984) (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958)). "The defendant's conduct and connection with the forum state must be such that [it] should reasonably anticipate being haled into court in the forum state." Id. (citing World-Wide Volkswagen v. Woodson, 444 U.S. 286, 297 (1980)).

Minimum contacts may give rise to either specific or general jurisdiction. Luv N' Care, 438 F.3d at 469. Specific jurisdiction exists when a defendant "has 'purposefully directed' its activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985) (citations omitted). Even if the controversy does not arise out of or relate to the defendant's purposeful contacts with the forum, general jurisdiction may be exercised if the defendant's contacts with the forum are sufficiently continuous

8

and systematic to support the reasonable exercise of jurisdiction. Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 416 (1984).

Once the plaintiff proves that defendant has sufficient minimum contacts with the forum to support jurisdiction, the burden shifts to defendant to show that the exercise of jurisdiction would offend traditional notions of fair play and substantial justice. Int'l Shoe Co., 326 U.S. at 316. In determining whether the exercise of jurisdiction comports with traditional notions of fair play and substantial justice, the court looks to the following factors: (1) the burden on the defendant of litigating in the forum state, (2) the interests of the forum state in adjudicating the case, (3) the plaintiff's interest in obtaining relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies. Asahi Metal Indus. Co. v. Superior Court, 480 U.S. 102, 113 (1987).

III.

Analysis

Plaintiff does not contend that the court has general jurisdiction over defendant. As a result, the court will analyze

only whether defendant has sufficient minimum contacts with Texas to support the exercise of specific jurisdiction.

The court is satisfied that defendant has "minimum contacts" with the forum state. She has availed herself of the privilege of conducting activities in the forum state, thus invoking the benefits and protections of the laws of Texas. The conduct in which she engaged in connection with the loan transaction were such that she should reasonably have anticipated that she might be sued in Texas in connection with her guaranty of performance of the obligations imposed on 150 Marcy by the note and deed of trust.

The fact that the documents, including the guaranty, made clear that the laws of Texas would govern the documents certainly would have alerted defendant that she might be subject to litigation in a Texas court. Her waiver in the guaranty of certain Texas laws that otherwise would have benefitted her as the guarantor also should have signaled defendant that she might well be held to answer under the guaranty in a Texas court. If the holder of the indebtedness sought to enforce its rights under the deed of trust, such as by a judicial foreclosure or a demand for the performance of other obligations imposed on 150 Marcy by

the deed of trust, such litigation logically would be brought in a Texas court.

Defendant would have known that she probably would be joined personally, as the guarantor, as a defendant in any such litigation. While not independently determinative, defendant's status as a high-level officer and one-half owner of 150 Marcy legitimately plays a role in the broader picture of whether she had minimum contacts with Texas. See Marathon Metallic Bldg. Co. v. Mountain Empire Constr. Co., 653 F.2d 921, 923 (5th Cir. Unit A. Aug. 1981) (per curiam). When she, as an official of 150 Marcy, signed loan documents that directly put 150 Marcy into business in the State of Texas pursuant to a loan that would not have been granted were it not for her personal guaranty, and when she made that personal guaranty, she engaged in purposeful and affirmative action that resulted in, at the least, a minimum contact by her with Texas. Id. The instant litigation arises out of, and relates to, such purposeful and affirmative action.

The second prong of the due process analysis likewise is met, i.e., the exercise of jurisdiction over defendant does not offend traditional notions of fair play and substantial justice. The record reflects that defendant has received a financial benefit from the business 150 Marcy conducted in Texas, which was

facilitated by her personal guaranty. Each party shares the inconvenience and added expense of litigation in Texas as distinguished from litigation in the party's state of citizenship. Texas has an interest in the dispute inasmuch as it involves Texas property and agreements that contemplate application of Texas law to matters in dispute. The performance of the parties under the loan documents necessarily will take place, in large part, in Texas. For these reasons, the court is inclined to think that the dispute can more efficiently be resolved by a court in Texas than a court in New York.

Thus, the court concludes that the exercise of personal jurisdiction over defendant is consistent with the Due Process Clause of the Fourteenth Amendment and that plaintiff's motion to dismiss for lack of personal jurisdiction should be denied.

IV.

Plaintiff's Motion for Leave to File an Amended Complaint

While defendant initially opposed plaintiff's motion for leave to file an amended complaint, defendant has now withdrawn that opposition. Therefore, the court is granting such motion.

V.

Order

Therefore,

The court ORDERS that defendant's motion to dismiss for lack of personal jurisdiction be, and is hereby, denied.

The court further ORDERS that plaintiff's motion for leave to file an amended complaint be, and is hereby, granted, and the clerk is directed to file the tendered first amended complaint.

SIGNED October 8, 2010.

JOHN McBRYDE
United States District Judge